### 31991. DAVIS *v.* FULTON NATIONAL BANK.

DECIDED JUNE 25, 1948. REHEARING DENIED JULY 13, 1948.

*John H. Hudson, J. Walter LeCraw,* for plaintiff in error.

*Smith, Kilpatrick, Cody, Rogers & McClatchey,* for defendant.

FELTON, J. R. E. Davis testified that he turned the check over to Mr. Symmers, an employee of the bank and told him he would like to get his money back by the next Friday; that he couldn't get the money immediately because the check was drawn on an out-of-town bank and that Symmers told him he was pretty sure he would have the money by Friday; that he didn't know who scratched his indorsement off the check; that he did not authorize Symmers or anyone else to remove his indorsement; that when he went back later and asked Mr. Symmers to give him the money on the check Mr. Symmers did not give him the money but said he gave Mr. Brackett credit for it; that he told Brackett about it and he and Brackett went to the head man in the bank and he said he gave Mr. Brackett credit for the check and that Brackett was overdrawn and "that was where it was at;" that the check was his and not Brackett's and that he never did authorize the bank to deposit the proceeds of the check to Brackett's account.

D. H. Symmers, teller for the defendant bank, testified: that Mr. Davis came to the bank with two checks, one on an Atlanta bank and one on the Citizens & Southern Bank of Thomaston,

Georgia; that he told Davis he could cash the local check but that he could not cash the out-of-town check but he would credit it to Brackett's account; that he told Davis that he didn't have an account there and he could send it off as a collection item and credit it to Brackett's account when the proceeds came back to the bank; that Mr. Davis consented to it; that he told Mr. Davis they would have to take his indorsement off and Davis gave him the right to take his indorsement off, which he did; that Thomas J. George, another employee of the bank, was present.

T. J. George testified that Davis consented that the check be sent out for collection in Brackett's name and that Davis' indorsement be taken off which was done where Davis could see it. Other evidence material to a decision of the questions raised will be set out in the opinion.

■ The first ground of the amended motion is an exception to the admission of a check in evidence and the testimony of D. H. Symmers with reference to its deposit in the name of Brackett. The check was one drawn on the Farmers & Merchants Bank of La Fayette, Alabama, by Singer Auto Supply Company, payable to R. J. Davis, and endorsed by Davis and by someone for Charles A. Brackett. For the declared purpose of showing "just how similar transactions were handled" in connection with the account of Charles A. Brackett, counsel for the defendant asked witness Symmers about Mrs. Brackett and her indorsement of her husband's name on the above described check. The witness stated that the last indorsement (Charles A. Brackett) was Mrs. Brackett's handwriting. Counsel for the plaintiff objected to any transaction with reference to Mrs. Brackett on the grounds that she was not a party to the case, that she was not a witness in the case, that she had no interest in the case, and that the evidence was immaterial, irrelevant and prejudicial. Whether such evidence was admissible or not, another check was introduced in evidence, for the same purpose, without objection, and Mr. Symmers testified, without objection, that Davis had deposited checks to Brackett's account which were payable to R. J. Davis (and inferentially, indorsed by him). The erroneous admission of evidence over objection is not error requiring a

reversal where similar evidence is admitted without objection. See Code (Ann.), § 70-203, catchword "same evidence."

■ The following charge is excepted to: "On the other hand, gentlemen, if he (the plaintiff) gave this check to the bank to be deposited to the credit of some other person, then the bank would not be liable." The ground of the exception is that it was erroneous in that it stated as a legal basis of liability or non-liability whether the check was deposited to the credit of Brackett or as a cash item for Davis' own benefit, when the court should have instructed the jury that if the check belonged to Davis he would be entitled to recover regardless of what account it was to be credited to. We do not think that the charge as given is correct under the facts, but it is not subject to the criticism made of it as will appear in our discussion of the general grounds of the motion for a new trial.

■ We are of the opinion that under the evidence a verdict for the plaintiff was demanded. The bank sought to show by circumstances that the check in reality belonged to Brackett. The check was for the purchase-price of an automobile which was sold to the Slade Motor Company of Thomaston, Georgia. The uncontradicted testimony of Davis and Brackett was that Brackett handled the sale for Davis and executed the bill of sale in his own name as each, on occasion, did for the other. Davis and Brackett both swore that the check belonged to Davis and that Brackett had no interest in the check or proceeds. The bank also sought to show that other transactions tended to show that the transaction in question was a deposit to the credit of Brackett. This evidence is not sufficient alone to show that the check was deposited irrevocably to Brackett's credit or that Brackett was interested in the check or proceeds. Davis went to the bank for the sole purpose of getting his $2075 check cashed. He did not go for the purpose of depositing it in his own name or anybody else's. There is no intimation that he had any scheme or design or was engaged in any kind of transaction which was in the least bit colorable. The testimony of Mr. Symmers and Davis shows that the check was deposited for collection. The only difference between them is whether the proceeds of the collection were to be paid to Davis or credited to Brackett's account, unconditionally and irrevocably. Under the

facts testified to by Mr. Symmers, he knew that prima facie the check belonged to the plaintiff. It was his suggestion that the check be handled for collection in Brackett's name but he still knew that he would be dealing with Davis' money even though Davis' indorsement was stricken at his suggestion. There is no denial by the bank that the check was collected. So far as the evidence shows the money is still in the bank to Brackett's credit. The money was placed to Brackett's credit without his consent and if it is still in the bank it can withdraw it from Brackett's account without his consent. If Brackett was overdrawn at the time of the transaction and the proceeds of the check went to pay his overdraft Davis is entitled to recover because the law will not tolerate an inducement to cause one to put $2075 in a rat hole without being told the truth. The bank had the information about where the money went and the circumstance surrounding it. To avoid recovery it would be incumbent upon the bank to show that the money was deposited to Brackett's account and that before Davis demanded it the money was withdrawn by Brackett under circumstances which would estop Davis from claiming it in view of his having permitted it to be placed to the credit of Brackett and to be withdrawn by Brackett before Davis demanded it. The bank has made no such showing and in the absence of such a showing it was not entitled to a verdict in its favor.

The court erred in overruling the motion for a new trial.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, page 232, Code, Ann., § 24-3501), requiring that the full court consider any case in which one of the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment reversed. MacIntyre, P. J., Felton, Gardner, Parker, and Townsend, JJ., concur. Sutton, C. J., dissents.*

SUTTON, C. J., dissenting. I concur in divisions 1 and 2 of the majority opinion, but dissent from division 3, as I am of the opinion that the verdict for the defendant bank was authorized by the evidence and that the judgment of the trial court should be affirmed. A teller in the Fulton National Bank, D. H. Symmers, testified, to the effect, that on the morning in question R. J. Davis came to the bank with two checks, one for $750, on the

Citizens and Southern National Bank of Atlanta, and the other for $2075, on the Citizens and Southern Bank of Thomaston, Georgia. The check on the Citizens and Southern National Bank of Atlanta for $750 was made payable to R. J. Davis, and the $2075 check was made payable to Charles A. Brackett, endorsed Charles A. Brackett and endorsed R. J. Davis. "I had handled checks for Mr. Davis and Mr. Brackett on out-of-town banks for collection on Mr. Brackett's endorsement to be credited to Mr. Brackett's account. I told Mr. Davis that day, I said, Mr. Davis, I can cash this check on a local bank . . and give you the money . . this out-of-town check I can't cash but I can credit it to Brackett's account. You not having a bank account, I can send it off as a collection item and credit it to Mr. Brackett's account when the proceeds come back to us. He consented to it. I said, now, Mr. Davis, we will have to take your endorsement off. I said, do you give me a right to take your endorsement off of this check here so I can credit it to Mr. Brackett's account, which he did. Mr. Davis was present, standing right in front of the window. There was a young man, Thomas J. George, who works in the bank, standing in the back to ask me a question." T. J. George testified: "He brought the check up there and Doug [Symmers] told him that it was made payable to Brackett and it wasn't the regular routine but that he could take that check and send it out for collection in Brackett's name, take Davis' signature off of the endorsement . . and credit Brackett's account. And he said, that's O. K. and Doug scratched it right off where he could see it. Me and Doug Symmers and Mr. Davis are the only ones I can recall that would be in a radius to see what was going on." Davis denied that he consented for the check to be credited to the account of Brackett, or that he authorized anyone to remove his endorsement from the check. Although Davis originally denied that he had any previous transactions with the bank where he had deposited money to Brackett's account, when confronted with several checks he admitted that there probably were occasions when he had deposited money to Brackett's account. Davis also testified : "I have not been in any type of business with Mr. Brackett." Brackett testified that he and Davis had been in the automobile parts business together and had split the profits. This is

pointed out to show the conflicts in the evidence in favor of the plaintiff and that offered by the defendant. The bank's witnesses stated that Davis gave his consent for the money to be deposited to Brackett's account. Davis denied this. The bank's witnesses showed previous transactions where Davis had actually deposited checks to Brackett's account, and Davis at first denied and then admitted that this was true. The issues were of fact, and the jury chose to disregard the evidence of Davis, and to believe that of the witnesses for the bank, which lead to the conclusion that the check was left at the bank for collection to be placed to the credit of Brackett, and in the absence of additional facts as to what transpired afterwards, the liability of the bank for the money is to Brackett, and the bank holds the money for Brackett, with the express approval of Davis. Although Brackett testified that the money due on the check was not his, he also testified that Davis had never asked him for the money, and if the jury believed that Davis deposited the check for collection and credit to Brackett, as previously discussed, Davis should look to Brackett, and not to the bank, for the money.